UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANDREW GUNNING, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>  Acting Commissioner of the )<br>  Social Security Administration, )<br>)<br>   Defendant. ) | Case No. CIV-21-195-P |

### ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is reversed and remanded for further administrative proceedings.

I.  Administrative History and Final Agency Decision

Plaintiff filed his application for disability insurance benefits on January 22, 2019. AR 20. Plaintiff alleged he became disabled on August 23, 2018. His application was denied initially on April 19, 2019, and upon reconsideration on July 28, 2019.

1

Plaintiff appeared with counsel and testified at an administrative hearing conducted telephonically before an Administrative Law Judge ("ALJ") on April 14, 2020. AR 45-65. A vocational expert ("VE") also testified. AR 65-70. On August 5, 2020, the ALJ issued a decision in which she found Plaintiff was not disabled within the meaning of the Social Security Act. AR 20-34.

Following the agency's well-established sequential evaluation procedure, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 23, 2018, the alleged onset date. AR 23. At the second step, the ALJ found Plaintiff had the following severe impairments: coronary artery disease, status post-stent placement; paroxysmal atrial flutter; moderate mitral regurgitation; left ventricular aneurysm; overweight; nicotine dependence; lumbar strain; and depression *Id.* At the third step, the ALJ found none of Plaintiff's impairments, considered singly or in combination, meets or medically equals any presumptively disabling impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 23-24.

At step four, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform some light work.

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the individual can understand, remember and carry out simple instructions and make simple work-related decisions; can interact occasionally with supervisors and co-workers but have only incidental interaction with the public.

AR 24. The ALJ determined at the second stage of step four that Plaintiff could not perform his past relevant work. AR 32-33.

At step five, relying on the VE's testimony, the ALJ found Plaintiff could perform other jobs existing in significant numbers in the national economy, including night cleaner, mail sorter, and laundry worker. AR 33-34. As a result, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from August 23, 2018 through the date of the decision. AR 34.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. <u>Issue Raised</u>

Plaintiff contends the ALJ should have included additional mental limitations in the RFC and in the hypothetical questions to the VE. Specifically, Plaintiff contends that because the ALJ found Plaintiff's adaptation skills to be moderately impaired, she should have accounted for this moderate limitation in the RFC. Doc. No. 18 at 3-8.

III. <u>General Legal Standards Guiding Judicial Review</u>

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569

F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (quotations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence or substitute its own judgment for that of Defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV. Analysis

This appeal arises primarily from Plaintiff and Defendant's disagreement regarding the meaning of one sentence in a report generated by Dr. Sarah Coats, to whom Plaintiff was referred for a mental status examination. Dr. Coats reported that Plaintiff was socially anxious, displaying a flat affect, odd social interaction, and

poor eye contact. AR 503-04. Plaintiff told Dr. Coats that the primary reason he was unable to work was his problem with confronting superiors and fellow workers. He described incidents at various jobs after which he was either fired, or quit before he was fired, because of his inability to interact appropriately with co-workers and superiors.

Plaintiff reported he was diagnosed as bipolar in 2016 during an inpatient stay at St. Mary's Resilience Behavioral Health Hospital. *Id.* However, Dr. Coats was of the opinion that Plaintiff had long suffered from chronic psychiatric problems. AR 505. She diagnosed Plaintiff with moderate bipolar disorder, with the most recent episode being depression, generalized anxiety disorder, and either intermittent explosive disorder or temper control issues related to his bipolar disorder. AR 504. In sum, Dr. Coats stated:

> Although the patient reports that psychiatric conditions were first diagnosed a few years ago at the time of an inpatient psychiatric hospitalization, it is apparent that he has a chronic history of some level of psychiatric dysfunction. His personality presentation is also somewhat notable, although formal diagnosis is deferred. His cognition and intellect appear intact on examination, and he is thought to be capable of performing work-related cognitive tasks, such as understanding and remembering instructions, sustaining attention, cognitively persisting, and abstracting. However, **social interaction and adaptation skills are impaired at this time**. Prognosis with continued mental health care is fair.

AR 505 (emphasis added). The ALJ found Dr. Coats' opinion persuasive. AR 32.

Plaintiff contends that Dr. Coats' opinion includes two separate impairments—impaired social interaction and impaired ability to adapt to a work setting. Doc. No. 16 at 5-6. Defendant contends Dr. Coats was referring solely to social interaction, and that her reference to adaptation skills pertained only to the ability to adapt socially. Doc. No. 20 at 5.

The significance of this disagreement becomes apparent as one reviews the decision in this case in more depth. At step three, the ALJ considered whether Plaintiff's mental impairments met or equaled Listing 12.04, which governs depressive, bipolar, and related disorders. To meet or equal Listing 12.04, the individual must satisfy the criteria in 12.04(A) and (B) or (A) and (C).[1] 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A2, Listing 12.04. The A criteria document the presence of a particular mental disorder, while the B criteria describe functional limitations incompatible with the ability to do any gainful activity. *See id.* § 12.00(A) (introduction to the mental health listings). To satisfy Listing 12.04's B criteria, the individual must have extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering, or applying information, interacting with others, concentration, persistence, or maintaining pace, and ability to adapt or manage oneself. *Id.*

---

[1] It is undisputed that the Alternative "Part C criteria" are not applicable to this case.

The ALJ necessarily discussed the "Part B Criteria" in determining the degree of limitations Plaintiff experienced as a result of his mental impairments. The ALJ determined Plaintiff has moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others and engaging in social activities; mild limitations in concentrating, persisting, or maintaining pace; and, most significant here, moderate limitations in adapting or managing oneself. AR 23-24. As to the limitations in the area of "adapting or managing oneself," the ALJ focused on Plaintiff's ability to handle self-care and hygiene:

> The claimant did not allege any symptoms or limitations that relate to this criterion. Furthermore, the claimant also stated that he is able to handle self-care and personal hygiene and care for pets. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene.

AR 24.[2]

The central questions in this case are, what did Dr. Coats mean when she found Plaintiff's "social interaction and adaptation skills are impaired at this time;" and did the ALJ's RFC include restrictions adequate to account for Plaintiff's moderate limitation in the ability to "adapt or manage oneself." The Court finds that the sentence in Dr. Coats' opinion is ambiguous. Further, Defendant's interpretation limiting it to the context of social interaction amounts to a *post hoc* rationalization.

---

[2] Arguably, the ability to care for pets does not indicate an ability to adapt to a work environment.

This Court may not accept post-hoc rationalizations to explain the ALJ's treatment of evidence when that treatment is not apparent from the decision itself. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

Moreover, the Social Security Administration's own regulations indicate that "adaptation" is not synonymous with "social interaction," and the ability to adapt to a work environment is critical when performing unskilled work. *See* 20 C.F.R. § 404.1545(c) ("A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work."); Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilit[y] (on a sustained basis) to . . . deal with changes in a routine work setting."); *see also* Programs Operations Manual Systems ("POMS"), DI § 25020.010(A)(3)(a) (same).[3] Thus, the ability to "deal with changes in a routine work-setting" is separate and distinct from social interaction, and the ability to complete simple, routine tasks, to make simple work-related decisions, or to interact occasionally with supervisors, co-workers and the

---

[3] https://secure.ssa.gov/poms.nsf/lnx/0425020010 (last accessed on November 22, 2021).

public. SSR 85-15, 1985 WL 56857, at *4; POMS, DI § 25020.010(A)(3)(a); *see also, cf., Gonzales v. Colvin*, 213 F. Supp. 3d 1326, 1332 (D. Colo. 2016) (explaining that "an inability to adapt to changes in the workplace is inconsistent with the most fundamental demands of unskilled jobs" (citing SSR 85-15, 1985 WL 56857, at *4)).

In an apparent attempt to accommodate Plaintiff's mental limitations, the ALJ's RFC limited Plaintiff to work requiring only that he be able to understand, remember, and carry out simple instructions and make simple work-related decisions. She further limited Plaintiff to jobs requiring him to interact with supervisors and co-workers only occasionally, and to have only incidental interaction with the public. It does not appear the RFC accounts for Dr. Coats' opinion and the ALJ's own finding that Plaintiff was moderately limited in his ability to adapt. Thus, the Court must consider this omission being mindful that a "moderate impairment is not the same as no impairment at all[,]" *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), and that moderate limitations "must be accounted for in an RFC finding[.]" *Jarmillo v. Colvin*, 576 F. App'x. 870, 876 (10th Cir. 2014).

The Tenth Circuit has not been completely consistent in determining whether mental limitations in general can be accommodated by limiting a claimant to particular work activities. The Tenth Circuit has "generally held that restricting a claimant to particular work activities does not adequately account for the claimant's mental limitations." *Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019)

9

(citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 & n.3 (10th Cir. 2012)). On the other hand, the Tenth Circuit has also found that "the agency can sometimes account for mental limitations by limiting the claimant to particular kinds of work." *Id.* (citing *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015)). In the latter case, however, the Tenth Circuit stated that "[u]nless the connection (between the limitation and the work) is obvious, . . . the agency must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion." *Parker*, 772 F. App'x at 616 (citing *Vigil* at 1203-04; *Wayland v. Chater*, No. 95-7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996)).

Here, the connection between Plaintiff's mental limitations, specifically a moderate limitation in his ability to adapt to changes in routine work settings, and the RFC is not obvious. The ALJ did not explain how her RFC would account for this limitation. Thus, the ALJ's RFC, restricting the complexity of Plaintiff's work, does not adequately incorporate Dr. Coats' opinion nor the ALJ's own finding that Plaintiff was moderately limited in his ability to respond appropriately to usual work situations and changes in routine work settings. On remand, the ALJ will have the opportunity to seek an explanation of Dr. Coats' opinion, order further psychological examinations, and/or reconsider the RFC determination.

V.	Conclusion

Based on the foregoing analysis, the decision of Defendant is reversed and remanded for further proceedings consistent with this Order. Judgment will issue accordingly.

ENTERED this   23rd  day of  November  , 2021.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE